Saul S. Streit, J.
This is a motion to dismiss, as insufficient, the separate, distinct and complete defense and counterclaim (pars. 15-21) pleaded in the amended answer of defendant Story Productions, Inc.
The theory of the complaint is that the defendant violated the agreement between the parties by failing in its alleged obligation to produce, or cause to be produced, a motion picture based on the literary property of plaintiffs and by failing in its alleged obligation to sell television and radio rights to said property. The agreement itself is not made part of the complaint. The defense to which this motion is addressed proceeds upon the theory that the agreement imposed no obligation upon defendant to produce, or cause to be produced, any motion pictures based on plaintiffs ’ literary property, or to sell any television or radio rights to said property. A copy of the agreement is annexed to the answer and made part of the counterclaim.
Examination of the agreement reveals that plaintiffs sold to defendant, inter alia, ‘1 in perpetuity all * * * motion picture rights ’ ’ in and to the literary property, ‘ ‘ for the entire world”, including “the exclusive right * * * to make motion picture versions or adaptations * * * and to produce and reproduce one or more motion pictures based thereon * * * and the exclusive right to show or project or broad *683 cast or exhibit the same in any manner and on any surface known or to be known.” Also expressly included were “ the exclusive right to record and reproduce ” language, music and any other sound in connection with the motion pictures; the “ exclusive right” to distribute, sell, lease, exhibit, and otherwise dispose of ‘ ‘ photoplays and/or motion pictures based upon the said literary material”; the “ exclusive right” to advertise and exploit the motion pictures, and “ exclusive ” rights to various other matters relating to the production, distribution and exhibition of the motion pictures. The agreement further conferred upon defendant the “ exclusive right to project by television, radio, electricity, or in any manner ” any motion picture version, and ‘ ‘ the exclusive right to broadcast with living actors, via radio and/or television, dramatic versions and sketches based upon and adapted from such motion picture versions.” In return for the exclusive rights, in perpetuity and for the entire world, conveyed by plaintiffs to defendant, the latter was to pay plaintiffs specified percentages of the proceeds received by defendant from the distribution of the motion pictures, from the sale by defendant of television rights and 16 mm. motion picture rights, and from the sale by defendant of broadcasting rights. As an advance against these payments, defendant agreed to pay, in specified installments, the sum of $100,000 which was a “ minimum guarantee ”, to which plaintiffs were to be entitled in any event, even if the specified percentages due plaintiffs came to less than that amount.
The agreement contains no express covenant by defendant to produce any motion picture, or to televise or broadcast, or to sell motion picture rights, or television or broadcasting rights. Nevertheless, the agreement is instinct with an obligation on the part of defendant to do more than merely pay the minimum guarantee of $100,000 (Wood v. Duff-Gordon, 222 N. Y. 88). The only way in which plaintiffs could ever be paid anything above the minimum guarantee was if a motion picture was produced or if the television or radio rights were availed of. Plaintiffs had conveyed to the defendant the exclusive motion picture, television, and radio rights, for the entire world, in perpetuity, in return for defendant’s promise to pay them specified percentages of the proceeds. Clearly the defendant was under an implied obligation either to exploit the rights transferred to it or else, at least, to use its best efforts to do so. The difficulty, in this case, is in determining whether defendant’s implied obligation was to produce (or *684 cause the production of) a motion picture and to exploit the television and radio rights, or only to use its best efforts to do so. Although the principle that a contracting party is liable for implied promises is plain, its application is often difficult (5 Williston, Contracts [rev. ed.], § 1293). In Wood v. Duff-Gordon (supra), the plaintiff was to have the exclusive right, for one year, to place defendant’s indorsements on the designs of others and to place her own designs on sale or license others to market them. The Court of Appeals, in an opinion by Judge Cardozo, said (p. 92): “His (plaintiff’s) promise to pay the defendant one-half of the profits and revenues resulting from the exclusive agency and to render accounts monthly, was a promise to use reasonable efforts to bring profits and revenues into existence ”. Obviously, in the cited case, there was insufficient basis for implying an absolute obligation, on the part of the plaintiff in the case, to sell products bearing the defendant’s indorsements or products designed by her,, for such sales might be impossible, through no fault of the plaintiff, if no one purchased the articles. In such circumstances, the most that could reasonably be implied was an obligation to use reasonable efforts to make sales. In the instant case, however, the situation may well be different. The agreement is susceptible of the interpretation that defendant impliedly agreed to produce a motion picture based on plaintiffs’ literary property. The exclusive right conveyed to it was . “ to .make motion picture versions * * * and to produce or reproduce one or more motion pictures ”. The provision for payments to be made by defendant provides for defendant’s paying plaintiffs percentages of the proceeds received by defendant from the distributor of the motion pictures and makes no provision for payment by defendant of a percentage of the proceeds received by defendant from the sale of motion picture rights. Defendant’s name, Story Productions, Inc., suggests that it may itself be a producer. If that be so, an even stronger case for implying an obligation to produce, or cause the production of, a motion picture would be presented. Plaintiffs’ reply brief takes the position that the intent of the parties is to be ascertained - not merely from the language used, but from ‘ ‘ the context and extrinsic circumstances, including prior negotiations and relations ”. In the court’s opinion, the written agreement is ambiguous as to whether defendant impliedly undertook to produce a motion picture and to cause the televising and broadcast of plaintiffs’ literary property, or merely to use its *685 best efforts to do so. It is possible that the agreement may have intended that defendant, in the case of motion pictures, was to be obligated to produce, whereas, in the case of television and radio, its undertaking was merely to use its best efforts to sell the rights to televise and broadcast. Parol evidence may be offered at the trial to resolve the ambiguity of the agreement. In these circumstances, the defense to which this motion is addressed, which alleges that defendant used its “ best efforts to produce or have produced a motion picture or pictures * * * and to avail the corporation and the plaintiffs of the benefits of said agreement and to realize the maximum return thereon ” will be held sufficient at this time. If the trial court should determine that defendant’s obligation was merely to use its best efforts and if defendant should succeed in establishing that it did use such efforts, defendant may prevail. On the other hand, if the determination at the trial should be that defendant was obliged actually to produce a motion picture and/or actually to cause television and radio broadcasts to be made, the defense will fall. A proper protection of defendant’s rights requires that the defense (pars. 15-18) remain, pending the determination at the trial, after the introduction of parol evidence, of the extent of defendant’s implied obligation.
We turn now to the counterclaim. It alleges that there was no obligation on the part of defendant “ to produce or have produced a motion picture ” or to sell any television or radio rights; that plaintiffs knew there was no such obligation, that plaintiffs also knew that ‘ ‘ by virtue of the custom of the industry and the circumstances and factors involved in the marketing of motion picture, television and radio rights to literary property, litigation affecting literary property ” tends to render or renders it virtually impossible to produce a motion picture based thereon or to sell television or radio rights. Defendant alleges that despite said knowledge of plaintiffs, they instituted this action and thereby destroyed or impaired the value of the rights transferred to defendant and caused it to lose the benefit of the $100,000 paid to plaintiffs for the rights and of more than $350,000 spent by defendant in its efforts to exploit the rights.
Defendant attempts to uphold the counterclaim as stating a cause of action for prima facie tort. An essential ingredient of such a cause of action is the intention of the person sued to harm his adversary (Ruza v. Ruza, 286 App. Div. 767, 769), or, put somewhat differently, “ the intentional infliction of tempo *686 ral damage ” without justification (Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79, 84). To uphold the counterclaim on the theory of prima facie tort, it is necessary to assume that the allegation that plaintiffs knew there was no such obligation, as defendant alleges, is true. This is, however, an allegation relating, as is clear from what has already been said in connection with the motion addressed to the defense, to what is really plaintiffs’ alleged knowledge of a conclusion of law whose correctness is far from clear and can only be resolved after a trial and, possibly, after the appellate courts have spoken. To attribute to plaintiffs, who are laymen, such knowledge of the correct answer to the perplexing question presented in regard to the rights of the parties, as could establish an intent to harm defendant, by bringing a wholly unjustified action, known by them to be such, is wholly unrealistic in the circmstances here presented.
The motion to dismiss is denied as to the defense and granted as to the counterclaim.